**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALLEN BROWN,<br><br>Plaintiff,<br><br>v.<br><br>POCONO TOWNSHIP POLICE DEPARTMENT, et al.<br><br>Defendants. | CIVIL ACTION NO. 3:24-CV-00974<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court is a report and recommendation filed by Magistrate Judge Phillip J. Caraballo recommending that the Court grant in part and deny in part the motion for summary judgment of Defendants Pocono Township Police Department, Officer Thomas Moser, Corporal Douglas Smith, Officer Kyle Tausendfreundt, and Officer Christopher Gupko (together, "Defendants") (Doc. 65). This case arises from a traffic stop involving Plaintiff Allen Brown ("Brown") and the Defendants. (Doc. 74, at 3). On September 8, 2026, Brown filed objections to the report, and on May 9, 2026, Defendants filed objections to the report. (Doc. 75; Doc. 76). Based on the Court's review of the relevant filings, both Brown's objections (Doc. 75) and Defendants' objections (Doc. 76) are **OVERRULED**, and the report (Doc. 74) will be **ADOPTED IN ITS ENTIRETY**, except for Judge Caraballo's recommendation that the parties address pending state law claims in supplemental filings.

## I. Background and Procedural History

On May 20, 2024, Brown commenced this action in the Monroe County Court of Common Pleas, alleging violations of his constitutional rights and related state law claims against Defendants. (Doc. 74, at 1). Brown's claims arise from a traffic stop in Tannersville,

Pennsylvania, during which Officer Moser temporarily restrained Brown and temporarily seized his property after pulling him over for speeding. (Doc. 74, at 1). Brown presents ten claims for relief, asserted against all Defendants: Count I – Fourth Amendment, Unreasonable Seizure; Count II – Fourth Amendment, Unlawful Search and Seizure; Count III – Fourteenth Amendment, Equal Protection; Count IV – Fourteenth Amendment, Due Process; Count V – Selective Enforcement; Count VI – Access to Justice; Count VII – Intentional Infliction of Emotional Distress ("IIED"); Count IX – Violation of Second Amendment Rights; and Count X – Punitive Damages. (Doc. 74, at 3; Doc. 1-2, at 4-9). On June 13, 2024, Defendants removed this action to the United States District Court for the Middle District of Pennsylvania based on federal question jurisdiction and supplemental jurisdiction over Brown's state law claims. (Doc. 74, at 1-2).

## II. LEGAL STANDARD

"A district court may 'designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition' of certain matters pending before the court." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (quoting 28 U.S.C. § 636(b)(1)(B)). Within fourteen days of being served a report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1). When a party timely files objections, the district court is to conduct a *de novo* review of the challenged portions of the Magistrate Judge's findings unless the objection is "not timely or not specific." *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir.1984); 28 U.S.C. § 636(b)(1). The Court may then "accept, reject, or modify, in whole or in part, the findings and recommendations." 28 U.S.C. § 636(b)(1). "Although the standard is *de novo*, the extent of

review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper." *Rahman v. Gartley*, No. CV 3:23-363, 2024 WL 555894, at *1 (M.D. Pa. Feb. 12, 2024) (citing *United v. Raddatz*, 447 U.S. 667, 676 (1980)).

### III. Findings of the Report and Recommendation

After first determining that that Brown's federal claims against Defendants are premised on alleged violations of his constitutional rights, and are therefore brought pursuant to 42 U.S.C. § 1983 (Doc. 74, at 12), Judge Caraballo concludes that the Pocono Township Police Department is not a proper defendant for a Section 1983 claim as it is not an independent entity from the Pocono Township municipality. (Doc. 74, at 14-15). Accordingly, Judge Caraballo recommends dismissing all federal claims, Counts I through VI and IX, against the Pocono Township Police Department with prejudice. (Doc. 74, at 15). Judge Caraballo further finds that Brown failed to present evidence showing that the individual Officers Smith, Tausenfreundt, and Gupko were personally involved in the alleged constitutional violations surrounding Brown's traffic stop. (Doc. 74, at 15). As defendants must be personally involved in the alleged constitutional violations to be liable under Section 1983, Judge Caraballo recommends that the Court dismiss all federal claims, Counts I through VI and IX, against Officers Smith, Tausenfreundt, and Gupko. (Doc. 74, at 18).

Judge Caraballo contends that while Brown's Counts I and II both advance claims under the Fourth Amendment for unreasonable search and seizure, Count I is premised primarily on Officer Moser's initiation of the traffic stop and placement of Brown in handcuffs, and Count II is premised primarily on Officer Moser's temporary seizure of Brown's property. (Doc. 74, at 18). Addressing Count I, Judge Caraballo finds that there is

no genuine issue of material fact concerning whether Officer Moser had reasonable suspicion to conduct a traffic stop of Brown's vehicle, so the traffic stop itself cannot support Brown's Fourth Amendment claims. (Doc. 74, at 22-23). Nevertheless, Judge Caraballo finds that a reasonable jury could find that Moser handcuffing Brown during the traffic stop constituted a Fourth Amendment violation. (Doc. 74, at 30). However, Judge Caraballo ultimately concludes that Officer Moser's "mistake of judgement" regarding handcuffing Brown is insufficient to defeat Officer Moser's qualified immunity, and he recommends that the Court grant summary judgment and dismiss Count I. (Doc. 74, at 34-35).

Addressing Count II, concerning Officer Moser's confiscation of Brown's property, Jude Caraballo finds that Officer Moser's temporary seizure of Brown's firearm does not give rise to an actionable Fourth Amendment claim because Officer Moser was authorized to temporarily seize Brown's firearm in the interest of officer safety. (Doc. 74, at 37-38). However, Judge Caraballo finds that Defendants' motion for summary judgment does not specifically address Officer Moser's temporary seizure of Brown's wallet and phone during the traffic stop. (Doc. 74, at 38). Therefore, Judge Caraballo recommends that the Court grant in part and deny in part summary judgment, dismissing Count II to the extent it alleges a violation of the Fourth Amendment for Officer Moser's seizure of Brown's firearm and documentation. (Doc. 74, at 40). Judge Caraballo recommends that Count II proceed to the extent Brown alleges a Fourth Amendment violation for Officer Moser's seizure of his phone and wallet. (Doc. 74, at 40).

Judge Caraballo addresses Counts III and V together because they both are based upon alleged violations of Brown's equal protection rights under the Fourteenth Amendment. (Doc. 74, at 40-41). Judge Caraballo finds that Brown failed to identify any evidence that

gives rise to a dispute of material facts regarding racial bias in Officer Moser's decision to pull Brown over or Officer Gupko's comments that Brown "had a whole car of ten-dollar bills" and that "I bet if you run [Brown's] history, he's got history." (Doc. 74, at 41-42). Accordingly, Judge Caraballo recommends that the Court grand summary judgment and dismiss Brown's equal protection claims in Counts III and V. (Doc. 74, at 43).

Regarding Brown's Fourteenth Amendment due process claims, Judge Caraballo first addresses Count IV, and finds that Brown fails to offer any evidence showing what deprivation of life, liberty, or property he suffered regarding Officer Moser's issuance of the traffic citations. (Doc. 74, at 44). Judge Caraballo notes that Brown does not oppose Defendants' motion for summary judgment on this ground and that the parties do not dispute that Brown received due process regarding the citations as he was afforded a hearing to defend himself against the citations in Magisterial District Court. (Doc. 74, at 44). Considering Brown's argument that Officer Moser fabricated evidence, Judge Caraballo finds that the parties do not dispute that Moser did not cite Brown for speeding. (Doc. 74, at 45). Accordingly, Judge Caraballo recommends that the Court grant summary judgment and dismiss Brown's due process claims in Count IV. (Doc. 74, at 45).

Judge Caraballo then addresses Count VI, Brown's access to justice claim predicated on the Fourteenth Amendment's Due Process Clause and its guarantee of fair legal proceedings. (Doc. 74, at 45). Judge Caraballo finds that Defendants fail to offer any evidence or rationale to support their contention that Officer Moser's body camera footage of the traffic stop was discarded pursuant to the Pocono Township Police Department's ordinary protocols. (Doc. 74, at 48). Judge Caraballo also finds that Defendants' contention that the police department did not have notice of Brown's claim until after the relevant body camera

footage was purged is not confirmed by the record. (Doc. 74, at 48). Judge Caraballo concludes that Defendants fail to show that there is no genuine issue of material fact regarding Brown's claim that the failure to preserve the bodycam footage violated the Fourteenth Amendment Due Process Clause. (Doc. 74, at 51). Judge Caraballo recommends that the Court deny summary judgment on Brown's due process claim against Officer Moser in Count VI. (Doc. 74, at 51).

Addressing Brown's Second Amendment Claim, Judge Caraballo finds that the Second Amendment is not so broad as to "bestow upon the citizenry a constitutional right to remain 'armed and loaded' while police officers perform essential investigatory functions in their presence," and the Fourth Amendment provides a better framework for determining an individual's rights during investigative activities. (Doc. 74, at 52) (quoting *Flanegan v. O'Leary*, No. 14-1379, 2015 WL 5311271, at *5 (W.D. Pa. Sept. 11, 2015)). Judge Caraballo recommends that the Court grant summary judgement and dismiss Count IX, Brown's Second Amendment claim. (Doc. 74, at 52).

Addressing Brown's state law claims, Judge Caraballo finds that Brown failed to offer any evidence addressing when he suffered emotional distress, symptoms or details about the distress, or medical evidence in support of his IIED claim. (Doc. 74, at 54). Judge Caraballo also finds that Brown failed to offer evidence addressing Officer Moser's alleged negligence. (Doc. 74, at 55). Judge Caraballo concludes that Brown's lack of response renders Defendant's motion unopposed with regard to the state law claims, and he recommends that the Court grant summary judgment and dismiss Count VII, Brown's IIED claim against Officer Moser, and Count VIII, Brown's negligence claim against Officer Moser. (Doc. 74, at 54-56). However, Judge Caraballo notes that Defendants did not move for summary

judgment on the state law claims against the Pocono Township Police Department, Officer Smith, Officer Tausendfreundt, or Officer Gupko, and Judge Caraballo recommends that the Court afford those parties an opportunity to address the state law claims in a supplemental briefing. (Doc. 74, at 56).

Finally, Judge Caraballo finds that Brown fails to address or offer any record evidence in opposition to Defendants' positions of punitive damages. (Doc. 74, at 57). Judge Caraballo concludes that Defendants' move to dismiss Count X, for punitive damages, is unopposed by Brown. (Doc. 74, at 57). Accordingly, Judge Caraballo recommends that the Court dismiss Count X and the request for punitive damages in Brown's prayer for relief. (Doc. 74, at 57).

## IV. DISCUSSION

The Court finds no error in Judge Caraballo's conclusions. Judge Caraballo's analysis is well-reasoned and supported by the applicable law. Brown makes six objections to Judge Caraballo's report. (Doc. 75). Brown contends that the report erred in recommending qualified immunity on Count I, construing Brown's equal protection and due process claims too narrowly, overlooking competent medical and record evidence in support of Brown's IIED claim, failing to fully account for the factual dispute on the justification for disarming Brown for Count IX, and erroneously recommending that the Court eliminate punitive damages as an available remedy. (Doc. 75, at 4, 9, 12, 16, 21, 25). Defendants respond that Brown's objections to the report are general objections, so the Court's review is limited to determining whether the conclusions in the report demonstrate clear error or manifest injustice. (Doc. 78, at 9). Defendants further contend that Brown's objections are mere disagreements with the report's conclusions, and that there is no legal basis to reject the report to the extent that it dismisses Brown's claims. (Doc. 78, at 15). Defendants also submit that

even under *de novo* review, the Court's adoption of the report, to the extent it dismisses Brown's claims, is warranted. (Doc. 78, at 15, 18).

Defendants separately object to the report's conclusion that Brown's state law claims should proceed against the Pocono Township Police Department and Officers Smith, Tausendfreundt, and Gupko. (Doc. 76, at 2). Defendants object to the report's conclusion that Defendants do not specifically address the applicability of the Fourth Amendment to Officer Moser's temporary seizure of Brown's wallet and phone during the traffic stop in their summary judgment motion. (Doc. 76, at 4). Finally, Defendants object to the report's conclusions on Brown's access to justice claim and request leave to either provide an affidavit from Seargeant Rath or a deposition of Sergeant Rath regarding the police department's purging of the relevant body camera footage. (Doc. 76, at 4). Brown responds in relevant part that Defendants should not be permitted to repair their summary judgment record after Judge Caraballo's issuance of the report. (Doc. 77, at 2). The Court will first address Brown's objections to the report, and the Court will then address Defendants' objections to the report.

A. JUDGE CARABALLO DID NOT ERR IN CONCLUDING THAT OFFICER MOSER HAS QUALIFIED IMMUNITY FOR COUNT I.

Brown objects to the report's conclusion that Officer Moser is protected by qualified immunity for the handcuffing of Brown during the traffic stop. (Doc. 75, at 4). Brown contends that the report already determined that should Officer Moser not be entitled to qualified immunity, that there is a dispute of material fact as to whether Officer Moser's use of handcuffs violated the Fourth Amendment. (Doc. 75, at 5). Brown avers that *Baker v. Monroe Township*, 50 F.3d 1186 (3d Cir. 1995), establishes precedent that places beyond debate that the use of handcuffs during an investigatory detention must be justified by the circumstances. (Doc. 75, at 5-6). Brown further avers that the Cout should consider that after

the initial handcuffing, Brown remained handcuffed for approximately eight minutes. (Doc. 75, at 7).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To resolve a qualified immunity claim courts must first decide whether the plaintiff alleged facts that amount to a constitutional violation. *Pearson*, 555 U.S. at 232 (citing *Saucier*, 533 U.S. 194, 201 (2001)). If the plaintiff satisfies the first step, the court must then "decide whether the right as issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citing *Saucier*, 533 U.S. at 201). At issue here is whether Officer Moser's application of handcuffs on Brown during the traffic stop violated a clearly established right.

"A right is not clearly established if existing precedent does not place the constitutional question 'beyond debate.'" *Zorn v. Linton*, 607 U.S. 568, 572 (2026) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021)). To find that a right is clearly established, courts must identify a case where an official acting under similar circumstances was held to have violated the Constitution, and that relevant precedent must define the right with a "high degree of specificity." *Zorn*, 607 U.S. at 572 (citing *Escondido v. Emmons*, 586 U.S. 38, 43 (2019); *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).

In his opposition to Defendants' motion for summary judgment, Brown contends that Officer Moser is not entitled to qualified immunity for handcuffing Brown because "[a] reasonable officer would know that the use of restraints under these circumstances, absent any threat or flight risk, would be unlawful." (Doc. 70, at 33). Brown cites *Baker* as precedent

establishing that handcuffing must be justified by specific, articulable facts. (Doc. 70, at 33); 50 F.3d at 1193-94. However, *Baker* does not place the constitutional question of Officer Moser's conduct beyond debate. *Baker* does not articulate the right to be free from restraint by handcuffs with a high degree of specificity; rather, the case merely provides that the use of handcuffs must be justified by the circumstances. 50 F.3d at 1193. Additionally, Officer Moser's handcuffing of Brown was not a similar circumstance to the handcuffing of the plaintiffs in *Baker*. In *Baker*, the plaintiffs testified that officers pointed guns at them, handcuffed them, and left them handcuffed for about twenty-five minutes during a drug raid. 50 F.3d at 1189. Therefore, Officer Moser did not violate a clearly established right that a reasonable person would have known when handcuffing Brown, who was carrying a firearm, during a traffic stop. *See Zorn*, 607 U.S. at 572; *see Pearson*, 555 U.S. at 232. Judge Caraballo did not err in concluding that Brown fails to identify a similar case that demonstrates Moser's application of handcuffs violated a clearly established right. (Doc. 74, at 34).

B. JUDGE CARABALLO DID NOT ERR IN CONCLUDING THAT BROWN'S EQUAL PROTECTION AND DUE PROCESS CLAIMS SHOULD BE DISMISSED.

Brown contends that the report construes his equal protection and due process claims too narrowly by focusing on the initial traffic stop and issuance of the citation, rather than the entire course of enforcement, including the manner in which the enforcement action was developed, documented, supported by evidence, and ultimately pursued. (Doc. 75, at 9, 12). Brown avers that the Court should consider statements made by Officer Gupko during the traffic stop that Brown had "a whole car of ten-dollar bills" and that "I bet if you run [Brown's] history, [Brown]'s got history," in determining summary judgment on his equal protection claim. (Doc. 75, at 10). Brown also avers that the Court should consider Officer

Tausendfreundt and Officer Moser's conversation on which traffic citation Officer Moser should issue Brown. (Doc. 75, at 13-14).

Judge Caraballo did consider Officer Gupko's comments about the cash in Brown's car and Brown's potential criminal history in evaluating Brown's equal protection claim. (Doc. 74, at 40-42). Judge Caraballo found that it is not evident from the record that Gupko's comments referred to Brown's status as an African American man. (Doc. 74, at 42). Judge Caraballo further found that the chronology of the events does not support an equal protection claim because Officer Gupko did not arrive at the traffic stop until Officer Moser had already pulled Brown over and handcuffed him. (Doc. 74, at 42). Accordingly, Judge Caraballo did not err in his conclusions and recommendation that the Court grant summary judgment with regard to Counts III and V and dismiss Brown's equal protections claims. (Doc. 74, at 43).

Likewise, Judge Caraballo considered the conversation between Officer Tausendfreundt and Officer Moser in evaluating Brown's due process claim. (Doc. 74, at 44-45). Judge Caraballo found that the parties do not dispute that Officer Moser did not ultimately cite Brown for speeding, as Officer Tausendfreundt suggested during the traffic stop. (Doc. 74, at 45). Judge Caraballo also found that Brown did not dispute that he received due process when he was afforded a hearing to defend himself against the traffic citations he did receive in Magisterial District Court. (Doc. 74, at 44). Accordingly, Judge Caraballo did not err in his conclusions or recommendation that the Court grant Defendants' summary judgment with regard to Count IV and dismiss Brown's due process claim. (Doc. 74, at 45).

### C. JUDGE CARABALLO DID NOT ERR IN CONCLUDING THAT THERE IS NO GENUINE ISSUE OF MATERIAL FACT FOR BROWN'S IIED CLAIM.

Brown objects to the report's finding that Brown failed to present competent medical evidence to support his IIED claim. (Doc. 75, at 16). Brown submits that the record contains

objective medical evidence of an acute and serious physical injury, evidence concerning the emotional circumstances surrounding the onset of the injury, and record evidence of underlying events that caused Brown's distress. (Doc. 75, at 16). Brown points to the medical report of Dr. Solibe Ufondu confirming that Brown suffered an acute parenchymal hematoma/hemorrhagic stroke on November 14, 2023 and the medical report of Dr. Brett Cucchiara confirming that Brown suffered an acute intracerebral hemorrhage. (Doc. 75, at 16-17).

To recover for the tort of IIED under Pennsylvania law:

> (1) The defendant's conduct must be intentional or reckless, (2) the conduct must be extreme and outrageous, (3) it must cause emotional distress, and (4) the emotional distress must be severe.
>
> *Frankel v. Warwick Hotel*, 881 F. Supp. 183, 187 (E.D. Pa. 1995) (citing *Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989)).

Where allegedly outrageously conduct is directed at the plaintiff and causes emotional distress, there must also be an allegation of physical injury. *Frankel*, 881 F. Supp. at 187 (citing *Johnson v. Caparelli*, 625 A.2d 668 (Pa. Super. Ct. 1997)). The Pennsylvania Supreme Court has held that "at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987). A Plaintiff also must provide evidence showing a causal link between the outrageous actions, the emotional distress, and any subsequent physical injury. *Messer v. First Fin. Fed. Credit Union of Maryland*, No. 11-4144, 2012 WL 3104604, at *3-*4 (E.D. Pa. July 30, 2012) (finding that although plaintiff suffered a serious physical injury, he failed to plead the requisite causal link between the defendant's actions and the physical injury).

Pursuant to Federal Rule of Civil Procedure 56(c), "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of

materials in the record . . ." Courts only need to consider cited materials, but courts may consider other materials on the record. Fed. R. Civ. P. 56(c)(3). When the moving party does not bear the burden of persuasion at trial, their burden to demonstrate no genuine issue as to any material fact may be discharged by showing "an absence of evidence to support the nonmoving party's case." *Wolf v. School Dist. of Philadelphia*, No. 01-1183, 2002 WL 1471289, at *2 (E.D. Pa. June 19, 2002) (citing *Celotex v. Catrett*, 477 U.S. 317, 324 (1986)). Then to show material dispute of fact, "[t]he nonmoving party 'may not rest upon the mere allegations or denials of the [nonmoving] party's pleading,' but it must support its response with affidavits, depositions, answers to interrogatories, or admissions on file." *Wolf*, 2002 WL 1471289, at *2 (citing *Celotex*, 477 U.S. at 324; *Schoch v. First Fidelity Bankcorporation*, 912 F.2d 654, 657 (3d Cir. 1990)).

On November 14, 2025, Brown filed a letter on the docket from Dr. Solibe Ufondu confirming that on November 14, 2023 a CT scan showed that Brown suffered an acute parenchymal hematoma in the left basal ganglia, which most likely resulted from bleeding within the brain tissue. (Doc. 52, at 4). On December 1, 2025, Brown filed a copy of the medical record of his November 14, 2023 CT scan. (Doc. 57). While Brown filed these documents on the docket, Brown failed to attach these documents or any expert reports to his brief in opposition to Defendants' motion for summary judgment.[1] In fact, Brown does not address Defendants' move for summary judgment on his IIED claim in his brief in opposition. (*See* Doc. 70). Accordingly, the Court need not consider the documents Brown cites to for the

---

[1] The Court did not locate anywhere on the docket or in the record a copy of a medical report from Dr. Brett Cucchiara.

first time in his objection to the report. Fed. R. Civ. P. 56(c)(3); *see Wolf*, 2002 WL 1471289, at *2 (citing *Celotex*, 477 U.S. at 324); *see Schoch*, 912 F.2d at 657.

Even if the Court were required to consider the letter and medical records, Officer Moser would still be entitled to summary judgment for Brown's claim of IIED. While in his objection, Brown provides evidence that he suffered a serious physical injury, he has not provided any evidence of emotional distress or a causal link between such emotional stress and the stroke. *See Messer*, 2012 WL 3104604, at *3-*4; *see also Boulden v. Colonial Garden Apartments, LLC*, No. 21-1112, 2024 WL 3950549, at *4-*6 (D. Del. Aug. 27, 2024). Accordingly, Judge Caraballo did not err in concluding that Brown's lack of response and failure to offer evidence renders the motion for summary judgement on the IIED claim unopposed. (Doc. 74, at 54).

D. Judge Caraballo did not err in concluding that there is no genuine issue of material fact for Brown's Second Amendment claim.

Brown objects to the report's conclusion that Officer Moser's temporary seizure of Brown's firearm during the traffic stop did not violate the Second Amendment. (Doc. 75, at 21). Brown objects to the report's reliance on *Flanegan v. O'Leary*, No. 14-1379, 2015 WL 5311271 (Sept. 11, 2015), and Brown contends that subsequent cases establish that the Second Amendment "protects the right of ordinary, law-abiding citizens to carry handguns publicly for self-defense." (Doc. 75, at 22) (citing *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022)); *United States v. Rahimi*, 602 U.S. 680 (2024)). Defendants aver that neither of the cases Brown cites to in his objection address the issue of a police officer's right to temporarily remove a firearm during a traffic stop. (Doc. 78, at 18).

In the interest of officer safety, "longstanding, unanimous precedent supports an officer's temporary seizure of firearms for the duration of his or her investigation." *Flanegan v. O'Leary*, No. 14-1379, 2015 WL 5311271, at *3 (W.D. Pa. Sept. 11, 2015) (collecting cases); *United States v. Woodley*, No. 2020-0004, 2021 WL 1082225, at *9 (D.V.I. March 20, 2021) (citing *United States v. Koepnick*, 409 F. App'x 138, 138 (9th Cir. 2011); *United States v. Rodriguez*, 601 F.3d 402, 408 (5th Cir. 2010); *United States v. Malachesen*, 597 F.2d 1232, 1234 (8th Cir 1979)) ("Police are permitted to temporarily seize and secure firearms found in the course of an investigation for officer safety"). In *New York v. Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 10 (2022), the Supreme Court, in determining whether New York's licensing regime respects the constitutional right to carry handguns publicly for self-defense, found that the Second and Fourteenth Amendment protect the right of ordinary, law-abiding citizens to possess a handgun in public for their self-defense. In *United States v. Rahimi*, 602 U.S. 680, 702 (2024), the Supreme Court, in determining the right of an individual subject to a domestic violence restraining order to possess firearms, found that an individual who poses a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment.

*Bruen* and *Rahimi* do not concern the temporary seizure of a firearm during a traffic stop, nor do they abrogate *Flanegan*, the case relied upon by Judge Caraballo in the report. *Compare* 597 U.S. at 10 and 602 U.S. at 702 *with* 2015 WL 5311271, at *3. Further, Brown did not respond to Officer Moser's move for summary judgment on the Second Amendment claim, rendering it unopposed. Accordingly, the Court agrees with Judge Caraballo's conclusions and recommendation to grant summary judgment with regard to Count IX and dismiss Brown's Second Amendment claim. (Doc. 74, at 52).

E. JUDGE CARABALLO DID NOT ERR IN CONCLUDING THAT BROWN'S REQUEST FOR PUNITIVE DAMAGES SHOULD BE DISMISSED.

Brown objects to the report's recommendation that punitive damages be eliminated as an available remedy for his surviving 1983 claims. (Doc. 75, at 25). Brown avers that punitive damages are a "potential remedy dependent upon the nature and state of mind accompanying the constitutional violation." (Doc. 75, at 26). Brown does not object to the dismissal of Count X for punitive damages as an independent cause of action, but he seeks to preserve his request for punitive damages as a remedy for any constitutional claims that proceed. (Doc. 75, at 26).

"Punitive damages are appropriate in § 1983 actions when a 'defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Carrol v. Clifford Twp.*, 625 F. App'x 43, 46 (3d Cir. 2015) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)); *Alexander v. Riga*, 208 F.3d 419, 430 (3d Cir. 2000). A defendant's state of mind, not their egregious conduct, determines whether punitive damages can be awarded in a civil rights case. *Schall v. Vasquez*, 322 F. Supp. 2d 594, 602 (E.D. Pa. 2004) (citing *Kolstad v. American Dental Ass'n,* 527 U.S. 526 (1999)).

In his brief in opposition, Brown failed to address Defendants' move to dismiss his request for relief in the form of punitive damages. (*See* Doc. 70; Doc. 74, at 57). Brown also failed to offer any record evidence showing Defendants' state of mind when committing allegedly egregious conduct. (*See* Doc. 70; Doc. 74, at 57). Accordingly, there is no dispute of material fact for the jury to consider regarding a punitive damages award. *See Carrol*, 625 F. App'x at 46 (affirming the district court's denial of a punitive damages award where the plaintiff presented no evidence to support a finding that the defendants acted with evil motive or reckless indifference). Judge Caraballo did not err in concluding that Brown did not oppose

Defendants' motion for summary judgment on punitive damages or in recommending that the Court dismiss Count X and Brown's prayer for relief in the form of punitive damages. (Doc. 74, at 57).

F. JUDGE CARABALLO DID NOT ERR IN CONCLUDING THAT DEFENDANTS DID NOT MOVE FOR SUMMARY JUDGMENT ON THE STATE LAW CLAIMS AGAINST POCONO TOWNSHIP POLICE DEPARTMENT, SMITH, TAUSENDFREUNDT, AND GUPKO.

Defendants object to the report's conclusion that Defendants did not move for summary judgment on the claims of negligence and IIED against the Pocono Township Police Department and Officers Smith, Tausendfreundt, and Gupko. (Doc. 76, at 2-3). Defendants contend that while they should have explicitly referenced the two state law claims, their argument that Brown cannot prevail on his claims against Officers Smith, Tausendfreundt and Gupko as a matter of law, extends to the state law claims against them. (Doc. 76, at 2-3). Defendants also contend that the negligence and IIED claims against the Pocono Township Police Department must be dismissed because the Political Subdivision Tort Claims Act bars negligence against municipalities and their agencies and because a municipal entity cannot be held liable for the intentional torts of an employee. (Doc. 76, at 3) (citing 42 Pa. Cons. Stat. § 8541; *Roskos v. Sugarloaf Twp.*, 295 F. Supp. 2d 480, 490 (M.D. Pa. 2003).

In their brief in support of summary judgment, Defendants' arguments on Brown's inability to prevail on his claims against Officers Smith, Tausendfreundt, and Gupko are based upon the federal law, specifically that a defendant must be personally involved in the constitutional violation to be liable under § 1983. (Doc. 66, at 33-34). Defendants do not provide arguments as to why the state law claims against Officers Smith, Tausendfreundt, and Gupko cannot prevail. (*See* Doc. 66). Nor do they provide arguments as to why the state law

claims against the Pocono Township Police Department cannot prevail in their summary judgment briefing. (*See* Doc. 66). The Court agrees with Judge Caraballo's conclusion that Defendants did not move for summary judgment on the negligence and IIED claims against the Pocono Township Police Department and Officers Smith, Tausenfreundt, and Gupko. (Doc. 74, at 56 n. 6). The Court does not, however, adopt Judge Caraballo's recommendation that the Court afford Defendants and Brown an opportunity to address these state law claims in a supplemental filing. (Doc. 76, at 56 n. 6). The time for dispositive motions has passed.

G. JUDGE CARABALLO DID NOT ERR IN CONCLUDING THAT OFFICER MOSER'S SEIZURE OF BROWN'S PHONE AND WALLET REMAINS AN ACTIONABLE FOURTH AMENDMENT CLAIM.

Defendants object to the report's finding that Defendants do not specifically address the applicability of the Fourth Amendment to Officer Moser's temporary seizure of Brown's wallet and phone during the traffic stop. (Doc. 76, at 4). Defendants contend that this issue was addressed on page fourteen of their brief, where they provide that:

> Officer Moser's action in taking and holding Plaintiff's license, registration and other paperwork, which Plaintiff voluntarily handed to Officer Moser, does not infringe on Plaintiff's right since, in no world, could this action be found to constitute a meaningful interference with [Plaintiff's possessory interest in this] property.

(Doc. 76, at 4).

Defendants further contend that although Brown's cellphone is not expressly mentioned in their summary judgment briefing, the arguments regarding Officer Moser's taking and holding of Brown's license, registration, and other paperwork extend to Brown's cellphone. (Doc. 76, at 4).

The Court agrees with the report's finding that Defendants failed to address whether Officer Moser's seizure of Brown's wallet and cellphone constituted a Fourth Amendment

violation in their summary judgment motion. (Doc. 74, at 38-39). Defendants were on notice of the Fourth Amendment claim regarding the seizure of Brown's wallet and cellphone because Count I of the complaint specifically alleges that "seizure of Plaintiff's phone, wallet and identification . . . violated [Brown's] Fourth Amendment rights," and Count II specifically alleges that "[t]he seizure of Plaintiff's phone and wallet exceed the permissible scope of the traffic stop . . ." The Court does not agree that Defendants' arguments regarding Officer Moser's seizure of Brown's license, registration and other paperwork extend to Brown's wallet and cellphone. (Doc. 76, at 4). While Brown voluntarily provided his license, registration, and other paperwork to Officer Moser during the traffic stop, Brown's cellphone and wallet were confiscated by Officer Moser because they were in Brown's hands when Officer Moser handcuffed him. (Doc. 76, at 39) Further, Officer Moser confiscated Brown's cellphone while Brown was recording the traffic stop. (Doc. 76, at 39). Defendants provide no argument as to whether the seizure of Brown's wallet and cellphone, while it was recording the officers, was reasonable under the Fourth Amendment. (*See* Doc. 66). Accordingly, the Court agrees with Judge Caraballo's conclusion that the undersigned cannot conclusively find the absence of a genuine issue of material fact as to the constitutionality of Officer Moser's phone and wallet confiscation. (Doc. 74, at 39). The Court likewise agrees with Judge Caraballo's recommendation that Count II should proceed on Officer Moser's seizure of Brown's phone and wallet. (Doc. 74, at 40).

### H. JUDGE CARABALLO DID NOT ERR IN CONCLUDING THAT THERE IS A GENUINE ISSUE OF MATERIAL FACT REGARDING BROWN'S FOURTEENTH AMENDMENT, ACCESS TO JUSTICE CLAIM.

Defendants object to the reports finding that there is a lack of evidence regarding the timing in which the body camera evidence was purged. (Doc. 76, at 4). Defendants seek leave

to supplement the record with either an affidavit from Sergeant Rath regarding his investigation of the deleted body camera footage or a deposition of Sergeant Rath. (Doc. 76, at 4).

Federal Rule of Civil Procedure Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact. Courts have discretion to allow parties to address errors in their summary judgment materials, including allowing additional time for the resubmission of unsworn allegations in supplemental affidavits. *Lauria v. Lieb*, 152 F.4th 549, 552-53 (3d Cir. 2025) (citing *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980); *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 116 n.4 (2d Cir. 2017); *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir. 1985)); *see Leese v. Martin*, No 11-5091, 2013 WL 5476415, at *12-*13 (D.N.J. Sept. 30, 2013). Courts generally extend such discretion to allow parties to supplement a summary judgment record when it is the nonmoving party who seeks to supplement the record to adequately respond to the summary judgment motion, when allowing supplemental materials will not lead to undue delay in the resolution of the action, when the supplement will lead to a high probability that the nonmoving party could create a genuine issue of material fact for trial, when the party provides a reasonable explanation for their failure to make a sufficient presentation in the first instance, or when a party seeks to cure unsworn statements in the record. *See Lauria*, 152 F.4th at 552-53; *see Leese*, 2013 WL 5476415, at *13; *see Katz v. Beebe Healthcare*, 2025 WL 1207117, at *3 (D. Del. April 24, 2025) (collecting cases).

Brown initiated this action by filing a complaint on or about May 20, 2024, and after several extensions of time, Defendants' fact discovery period closed on May 27, 2025, and

Defendants' expert report deadline passed on February 13, 2026. (Doc. 29; Doc. 61). Defendants have been on notice of Brown's access to justice claim since he filed the complaint in May 2024; therefore, Defendants have had ample time to prepare an affidavit for Sergeant Rath or conduct a deposition of Sergeant Rath prior to filing their motion for summary judgment on February 27, 2026. (Doc. 65). In their objection, Defendants do not provide any reasoning for their failure to present evidence of Sergeant Rath's investigation when moving for summary judgment. (*See* Doc. 76). At this stage of litigation, allowing Defendants to conduct additional discovery and supplement the record will cause undue delay. *See Leese*, 2013 WL 5476415, at *13; *see Katz*, 2025 WL 1207117, at *3 (collecting cases). Accordingly, the Court agrees with Judge Caraballo's conclusions and declines to grant Defendants additional time to supplement the record. (Doc. 74, at 45-51).

## V. CONCLUSION

The Court agrees with the report's sound reasoning and discerns no error of law. Accordingly, **IT IS HEREBY ORDERED THAT** Brown's objections (Doc. 75) and Defendants' objections (Doc. 76) are **OVERRULED** and Judge Caraballo's report and recommendation (Doc. 74) is **ADOPTED IN ITS ENTIRETY** as the opinion of the Court. The Defendants' motion for summary judgment (Doc. 65) is **GRANTED in part and DENIED in part** as follows:

1. The Section 1983 claims (Counts I through VI and IX) against the Pocono Township Police Department, Corporal Douglas Smith, Officer Kylie Tausendfreundt, and Officer Christopher Gupko are **DISMISSED WITH PREJUDICE**;

2. The Section 1983 claims against defendant Officer Moser in Counts I, III through V, and IX are **DISMISSED WITH PREJUDICE**;

3. The Section 1983 claim against defendant Officer Moser in Count II, to the extent it alleges a violation of the Fourth Amendment premised on Moser's seizure of Brown's firearm and documentation, is **DISMISSED WITH PREJUDICE**;

4. Summary judgment on the Section 1983 claims against defendant Officer Moser in Count II, to the extent it alleges a violation of the Fourth Amendment premised on Moser's seizure of Brown's phone and wallet, and in Count VI is **DENIED**;

5. The state law claims (Counts VII and VIII) against defendant Officer Moser are **DISMISSED WITH PREJUDICE**; and

6. Brown's claims for punitive damages in Count X and his prayer for relief are **DISMISSED**;

An appropriate Order will follow.

**Dated: September 29, 2026**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**